```
            IN THE UNITED STATES DISTRICT COURT
               DISTRICT COURT OF NEW JERSEY
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | HONORABLE JOSEPH E. IRENAS |
| Plaintiff, | : | CIVIL ACTION. NO. 07-4961 |
| | : | (JEI) |
| v. | : | |
| | : | **OPINION** |
| MARQUS HAMWRIGHT, | : | |
| Defendant. | : | |

**APPEARANCES:**

CHRISTOPHER J. CHRISTIE, UNITED STATES ATTORNEY
By: Leah A. Bynon, Assistant United States Attorney
970 Broad Street
Suite 700
Newark, NJ 07012
    Counsel for Plaintiff

MARQUS HAMWRIGHT, *pro se*
538 Alexander Ave.
Maple Shade, NJ 08052
    Defendant

**IRENAS**, Senior District Judge:

Before the Court is Plaintiff United States of America's (the "Government's") Motion for Summary Judgment. The Government seeks to collect from Defendant Marqus Hamwright the amount due on six defaulted federally insured student loans. Hamwright has not opposed the Motion. For the reasons set forth below, the Government's Motion for Summary Judgment will be granted.

I.

Hamwright received a total of $80,000 in student loans. He has never made any payments on the loans. Hamwright applied for and was granted six Health Education Assistance Loans ("HEALs") while attending the Philadelphia College of Osteopathic Medicine.[1] (Cert. of Barry Blum, Chief of Referral Control Section in Debt Management Branch, Department of Health and Human Services, p. 1.) The Student Loan Marketing Association ("SLMA") purchased and received an assignment for five of Hamwright's loans. The Pennsylvania Higher Education Assistance Agency ("PHEAA") purchased and received an assignment for the sixth loan.[2] *Id.* at 2. Hamwright signed a separate promissory note

---

[1] HEAL is a federal student loan insurance program administered by the Department of Health and Human Services ("HHS") designed to encourage lenders to make loans to students studying in various health fields. 42 U.S.C. § 292; 42 C.F.R. § 60.1(a). Qualified students in health-related graduate programs may obtain HEAL loans from private lenders, and are then obligated to repay the lender the full amount of the money borrowed, plus interest. 42 C.F.R. § 60.1(a). The Government insures the loans so that if a student defaults on a loan, the private lender may request that the Government purchase and receive an assignment of the defaulted promissory notes. 42 C.F.R. § 60.1(c).

[2]

| Loan # | Lender | Date of Promissory Note | Amount Borrowed |
|---|---|---|---|
| (1) | SLMA | 8/14/1994 | $20,000 |
| (2) | SLMA | 6/13/1995 | $10,000 |
| (3) | SLMA | 10/18/1995 | $10,000 |
| (4) | SLMA | 5/20/1996 | $20,000 |
| (5) | SLMA | 5/05/1997 | $10,000 |
| (6) | PHEAA | 5/05/1997 | $10,000 |

(Blum Cert., p. 1-2.)

2

for each loan.  (Bynon Decl., Ex. B.)  The total principal amount for all six HEAL loans was $80,000.

Hamwright left the Philadelphia College of Osteopathic Medicine and received several deferments from both SLMA and PHEAA between July 1, 1998 and June 30, 2002.  (Blum Cert., p. 1.) SLMA notified Hamwright that payments for the five loans held by SLMA were to begin on May 1, 2003.  *Id.* at 2.  PHEAA notified Hamwright that payments for the loan held by PHEAA were to begin on May 3, 2003.  *Id.*  Hamwright failed to make any payments to either SLMA or PHEAA.  *Id.*

Both SLMA and PHEAA sent Hamwright final demand letters in the spring of 2004, notifying him that they would file a default claim with HHS if his nonpayment continued.  (Blum Cert., p. 2.) Hamwright still did not make any payments.  *Id.*  SLMA filed a claim with the Department and received $111,869.00 on May 20, 2004.  *Id.*  The five loans held by SLMA were assigned to the Department.  *Id.*  PHEAA filed a claim with the Department and received $13,762 on April 14, 2005.  *Id.*  The loan held by PHEAA was also assigned to the Department.  *Id.*  Thereafter, Hamwright failed to cooperate even after he was notified of the various adverse actions taken by the Government as a result of his delinquency.[3]

---

[3] In letters dated July 30, 2004, and July 1, 2005, Hamwright was notified that his account with HHS had been referred to OSI Collection Services for collection and would be

3

On March 7, 2007, Hamwright filed for relief under Title 11 U.S.C. Chapter 7 in the United States Bankruptcy Court in the District of New Jersey (Case No. 07-13130-GMB). (Blum Cert., p. 3.) The HEAL debt was not dischargable in bankruptcy, but the payments were suspended during the proceedings.[4] *Id.* The bankruptcy was discharged on June 8, 2007.

Hamwright was notified by letter dated June 21, 2007, that the HEAL debt was not discharged and that he had thirty days to enter into a repayment agreement and make a good faith payment. *Id.* Hamwright failed to enter into a repayment agreement. *Id.* In a letter dated July 23, 2007, Hamwright was advised that he had thirty days to enter into a repayment agreement, or his debt would be referred to the DOJ. *Id.* Hamwright failed to respond. *Id.*

---

referred to the Department of Justice (DOJ) if he did not pay in full or enter into a repayment agreement. (Blum Cert., p. 3.) Hamwright was notified in letters dated September 23, 2004, and July 22, 2005, that the Department would refer his debt to other federal agencies for the purpose of administrative offset if he did not repay his debt or enter into a repayment agreement. *Id.* In letters dated March 4, 2005, and January 9, 2006, Hamwright was notified that he had sixty days to remit payment or enter into a repayment agreement to avoid exclusion from participation in the Medicare/Medicaid Programs. *Id.*

[4] A HEAL loan may be discharged in bankruptcy only if (1) seven years have passed since the first date of repayment; and (2) the Bankruptcy Court finds that nondischarge of the debt would be unconscionable. 42 U.S.C. § 292f(g). Repayment was required to start for the SLMA loans on May 1, 2003, and repayment of the PHEAA loan was required to start on May 3, 2003. The six HEAL loans could not be discharged because less than seven years have elapsed since repayment began.

On October 15, 2007, the Government filed the instant Complaint alleging a breach of promissory note.[5] The Clerk of Court received a letter from Hamwright on November 16, 2007, which was docketed as Hamwright's Answer to the Complaint. (Hamwright Ans., Docket No. 4.)  The letter stated:

> After completing my residency in August 2002, my mother became extremely ill and I decide [sic] to move in and take care of her. She was hospitalized more than 7 times over a 4 year period. My mother died on June 19, 2006. During this time period, I was unemployed and did not receive any other forms of income.
> I did receive calls from the lender/creditors over the years and I explained my hardship. The calls kept coming and it was someone new each time, so I found myself explaining my situation over and over again without any resolution. Some examples of quotes receive [sic] by collection agency would be paying 5000 dollars a month for nine month [sic] then renegotiate a reduced payment. I was unable to comply with this agreement. I also explained that I was filing for bankruptcy on March 7, 2007 and discarded [sic] on June 8, 2007. Also with the understanding that I would have to pay back my Federal Student Loans.
> I just started my private practice in 2006 and the difficulties of developing a patient [sic] still continues to this date. I am not trying to run away from my responsibility and I requested for [sic] an acceptable repayment schedule. Since my bankruptcy, I have sought the advice of Credit Care in Cherry Hill, New Jersey to restore my credit.

(Hamwright Ans.; Docket No. 4.)  All correspondence sent to Hamwright has been returned as undeliverable since May of 2008.

The Government filed this Motion for Summary Judgment on

---

[5] An executed Return of Service was filed with the Clerk of Court on November 13, 2007.  It indicates that Hamwright was personally served with the Summons and Complaint at 538 Alexander Avenue, in Maple Shade, New Jersey, on November 5, 2007.

July 2, 2008.  Hamwright has not filed any response to the Government's Motion.[6]

**II.**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court may draw all reasonable inferences and view all evidence submitted in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The party seeking summary judgment bears the initial burden of providing the Court with the basis for its motion as well as

---

[6]  The Motion was originally filed without a certificate of service.  When the Court inquired about the absence of a certificate of service, AUSA Bynon wrote the Court indicating that due to an oversight, the Motion had not been served on Hamwright.  AUSA Bynon stated that the oversight had been remedied and requested an extension of the return date, in order to afford Hamwright an adequate opportunity to respond.  However, AUSA Bynon could only send the motion papers to the address on file, which has proven to be an out-dated address.

identifying what in the record demonstrates the absence of a genuine issue of material fact. *Celotex Corp. V. Catrett*, 477 U.S. 317, 322 (1986). If the non-moving party fails to oppose the motion for summary judgment, the Court "will accept as true all material facts set forth by the non-moving party with appropriate record support." *Anchorage Assocs. V. Virgin Islands Bd. Of Tax. Rev.*, 922 F.2d 168, 175 (3d Cir. 1990). An unopposed motion may only be granted if "appropriate," and may not be granted just because the non-movant has failed to challenge it. Fed. R. Civ. P. 56(e); *Anchorage Assocs.*, 922 F.2d at 175.

### III.

The Government seeks to collect the total balance due on six promissory notes for federally insured loans. To recover on a promissory note, the Government must show "(1) the defendant signed it; (2) the government is the present holder; and (3) the note is in default." *United States v. Hargrove*, No. 06-1059, 2007 U.S. Dist. LEXIS 70396 (W.D. Pa. 2007) (citing *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001)).

First, the record shows that Hamwright signed all six promissory notes. Hamwright completed and signed six separate applications for federal HEAL loans. (Bynon Decl., Ex. B.) Hamwright also signed a corresponding promissory note for each application detailing his repayment obligations. *Id.*

Additionally, Hamwright's "Answer" implicitly acknowledges that he is obligated to repay the loans.  (Hamwright Ans.)  Accordingly, there is no genuine dispute that Hamwright signed the notes.

Second, the Government currently holds all six promissory notes signed by Hamwright.  Five of the loans were originally held by SLMA and one loan was held by PHEAA.  (Blum Cert., p. 2.)  Both SLMA and PHEAA filed insurance claims with HHS when Hamwright failed to make any payments on the loans.  *Id.*  The Government paid SLMA $111,869.00 for its claim, and SLMA assigned the first five loans to the Government on May 20, 2004.  *Id.*  The Government paid PHEAA $13,762.00 for its claim, and PHEAA assigned the sixth loan to the Government on April 14, 2005.  *Id.*  Accordingly, there is no genuine dispute that the Government currently holds all six promissory notes.

Finally, all six promissory notes are in default.  The promissory notes required repayment beginning the first day of the tenth month after ceasing to be a full-time student or completing a residency program.  (Bynon Decl., Ex. B.)  The Government asserts that Hamwright has failed to make any payment towards his loans since they became due in 2003.  The record is devoid of any evidence to the contrary.  There is no genuine dispute that all six promissory notes are in default.

The record supports the Government's contention that

Hamwright signed all six promissory notes, that the Government currently holds all six promissory notes, and that all six promissory notes are in default.  Accordingly, the Government is entitled to judgment as a matter of law.

The total debt due to the Government as of June 18, 2008, is $162,544.39; $161,333.26 of which is the principal amount and $1,211.13 of which is interest.[7]  (Blum Cert., p. 1.)  From June 18, 2008, until today (i.e., the date of judgment), interest has accrued on the principal amount at the rate of $22.65 per day.  *Id.*  The total amount owed to the Government is $162,544.39 plus interest of $22.65 per day from June 18, 2008, to today.

**IV.**

For the reasons set forth above, this Court will grant the Government's Motion for Summary Judgment.  The Court will issue an appropriate order and judgment for the Government.

Date: August 12, 2008

                              s/ Joseph E. Irenas
                              **JOSEPH E. IRENAS, S.U.S.D.J.**

---

[7] Hamwright initially borrowed a principal amount of $80,000.  Due to the semiannual compounding of interest over the past fourteen years, the current principal amount is greater than the original amount borrowed.  (Blum Cert., p. 1.)